UNITED STATES DISTRICT COURT

DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Danilo Dalan,<br><br>　　　　　　Plaintiff,<br>vs.<br><br>Innovis Health, LLC d/b/a Essentia Health,<br><br>　　　　　　Defendant. | Case No:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Danilo Dalan for his Complaint against Defendant Innovis Health, LLC d/b/a Essentia Health, states and alleges as follows:

## PARTIES

[¶1]　Plaintiff Dr. Danilo "Dan" Dalan is a natural person residing in and a citizen of the State of North Dakota.

[¶2]　Dr. Dalan is a board-certified allergy specialist.

[¶3]　Defendant Innovis Health, LLC does business as Essentia Health and operates healthcare facilities and clinics in North Dakota, including in the Fargo area.

[¶4]　Innovis Health, LLC is a citizen of every state of which any member of the LLC is a citizen.

[¶5]　On information and belief, Innovis Health, LLC's sole member is Essentia Health.

[¶6]　On information and belief, Essentia Health is a Minnesota nonprofit corporation with its principal place of business in Minnesota.

1

[¶7] A corporation is a citizen of every state by which it has been incorporated and of the state where it has its principal place of business.

[¶8] Essentia Health's headquarters is located in Duluth, Minnesota.

[¶9] All of Essentia Health's primary executive, administrative, financial, and management functions are in Minnesota, where its corporate officers direct, control, and coordinate its activities.

[¶10] Accordingly, Essentia Health is a citizen of Minnesota.

[¶11] Based on the citizenship of Defendant's sole member, Defendant Innovis Health, LLC is a citizen of Minnesota and not North Dakota.

## JURISDICTION AND VENUE

[¶12] This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff (North Dakota) and Defendant (Minnesota), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

[¶13] Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the District of North Dakota, including Plaintiff's work location and the acts leading to termination.

[¶14] Venue is also proper because Defendant conducts substantial business in this District and is subject to personal jurisdiction here.

## BACKGROUND FACTS

[¶15] Defendant recruited and hired Plaintiff as a physician providing allergy-related care and services in the Fargo, North Dakota area.

[¶16] Plaintiff and Defendant entered into a written three-year Physician Employment Agreement (the "Agreement"), signed in April 2024.

[¶17] Under the Agreement, Plaintiff was to, among other things, "provide professional medical services" and "exercise independent medical judgment" on Defendant's behalf. In return Defendant would, among other things, pay Plaintiff $324,000/year and Plaintiff would receive additional benefits described in the Agreement.

[¶18] The Agreement also addressed the process by which Defendant could terminate Plaintiff's employment, including termination "for cause" and more specifically the failure to "meet or exceed Essentia Health's performance, productivity, and quality requirements…"

[¶19] Defendant hired Plaintiff to provide specialty allergy care and to exercise independent medical judgment consistent with generally accepted standards of care.

[¶20] Plaintiff began work for Defendant on or about July 29, 2024, and thereafter performed his job duties.

[¶21] During his employment, Plaintiff identified and raised concerns regarding allergy practice workflows and patient care processes, including issues involving access to same-day skin and breathing testing and standardizing allergy shot administration.

[¶22] Plaintiff made good-faith recommendations and suggestions necessary to treat allergy patients effectively and competently, consistent with recognized best

practices, and attempted to work collaboratively with clinic leadership and staff to bring practices into alignment with accepted specialty standards.

[¶23] Plaintiff repeatedly requested that Defendant implement these standard practices. Instead, leadership and staff delayed or declined meaningful changes, including by responding that they would "look into it" while continuing to insist on doing things the way they had "always been done," leaving the deficiencies uncorrected.

[¶24] When Plaintiff raised these concerns and expressed sincerely held medical opinions based on his specialist training and experience, Defendant characterized Plaintiff's clinical disagreements and efforts to improve the clinic as "disrespect," "not following directions," or interpersonal deficiencies, rather than addressing the substance of his medical recommendations.

[¶25] Plaintiff also raised concerns regarding Defendant's allergy shot operations and related billing practices.

[¶26] Specifically, Plaintiff in good faith reported suspected improper Medicare billing associated with allergy shot vial preparation and billing units (including billing under CPT code 95165), and expressed concern about billing accuracy and compliance, including the use of his National Provider Identifier ("NPI") in connection with billing he believed to be improper.

[¶27] To the best of Plaintiff's knowledge and based on his knowledge, experience, and training, under Medicare billing under CPT code 95165, a provider may not generally bill more than 10 doses per vial. On information and belief Defendant is and has been billing more than 10 doses per vial.

[¶28]   Plaintiff made these reports and raised these concerns to Defendant personnel responsible for clinic operations, billing, and/or management, including supervisors and administrative leaders, and requested that the issues be corrected.

[¶29]   After Plaintiff raised the above concerns, Defendant increased scrutiny of Plaintiff's work and subjected him to heightened monitoring and criticism.

[¶30]   Plaintiff was referred for internal review of certain patient and/or staff encounters. Those reviews did not substantiate wrongdoing by Plaintiff and did not justify termination.

[¶31]   On or about August 6, 2025, Defendant presented Plaintiff with a written Performance Improvement Plan ("PIP").

[¶32]   The PIP alleged, among other things, that Plaintiff had received patient complaints, had issues interacting with staff, and had issues involving a medication labeling.

[¶33]   Plaintiff disputed the accuracy and fairness of the PIP allegations, requested clarification and appropriate process, and sought the involvement of Defendant's human resources personnel.

[¶34]   Plaintiff contended that the intra-clinic disputes described in the PIP largely reflected Plaintiff's exercise of medical judgment and his good-faith efforts to implement accepted specialty standards, not misconduct or poor performance.

[¶35]   Plaintiff nonetheless attempted in good faith to comply with the PIP requirements, including seeking out additional training that was not required but Plaintiff wanted to be sure that he demonstrated a willingness and desire to improve.

[¶36] Plaintiff was not provided meaningful support or objective benchmarks sufficient to satisfy the PIP.

[¶37] Despite Plaintiff's efforts to comply with the PIP and in the absence of new substantiated misconduct, Defendant terminated Plaintiff's employment on or about November 20, 2025.

[¶38] Defendant represented that the termination was "for cause" and/or based on performance or conduct concerns, but the stated grounds were not true "cause" under the Agreement and were pretextual.

[¶39] Defendant's decision to terminate Plaintiff was the result of Plaintiff's good-faith reporting of suspected unlawful billing/compliance issues, Plaintiff's ongoing advocacy for patient-care improvements and accepted allergy practice standards, and related concerns raised during his employment.

[¶40] As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages and benefits, harm to professional standing, and other damages to be proven at trial, all in excess of $75,000.00.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

[¶41] Plaintiff realleges all previous and subsequent paragraphs as if fully set forth herein.

[¶42] The Agreement is a valid and enforceable contract between Plaintiff and Defendant. Plaintiff performed his obligations under the Agreement.

[¶43] Defendant breached the Agreement by, among other things: Terminating Plaintiff without contractual "cause," and/or without satisfying the Agreement's requirements for termination for cause and failing to pay Plaintiff compensation, benefits, and/or other amounts due under the Agreement in connection with employment and separation.

[¶44] Defendant's breaches directly and proximately caused Plaintiff damages exceeding $75,000, including but not limited to lost compensation, lost benefits, and other consequential damages.

## COUNT II
## WHISTLEBLOWER RETALIATION

[¶45] Plaintiff realleges all previous and subsequent paragraphs as if fully set forth herein.

[¶46] Plaintiff, in good faith, reported and/or was about to report suspected violations of federal law and regulations relating to Medicare billing and healthcare compliance, including suspected improper billing practices connected to allergy shot vial preparation and billing units (including CPT 95165) and the use of his NPI.

[¶47] Plaintiff made these reports to Defendant and/or persons within Defendant's organization with responsibility to investigate, discover, or correct the suspected violations.

[¶48] Plaintiff's reports constitute protected activity under Minn. Stat. § 181.932 and/or N.D.C.C. § 34-01-20.

[¶49] Defendant took adverse employment actions against Plaintiff, including escalating discipline, imposing the PIP, and terminating Plaintiff's employment.

[¶50] Plaintiff's protected activity was a motivating factor in Defendant's termination of employment and Defendant's stated reasons for termination were pretextual.

[¶51] As a direct and proximate result, Plaintiff suffered damages including lost wages and benefits, emotional distress, and other losses in an amount in excess of $75,000 and in an amount to be proven at trial.

[¶52] Plaintiff is entitled to all remedies available under Minn. Stat. § 181.932 and/or N.D.C.C. § 34-01-20, including but not limited to compensatory damages and reasonable attorneys' fees and costs.

[¶53] **WHEREFORE**, Plaintiff request that judgment be entered against Defendant as follows:

[¶54]   1.   Damages in an amount in excess of $75,000.00;

[¶55]   2.   His costs, disbursements, pre-judgment and post-judgment interest, and attorney fees as allowed by law; and

[¶56]   3.   Such further and additional remedies as the Court deems just and equitable.

[¶57] **PLAINTIFF REQUESTS A TRIAL BY JURY BY THE GREATEST NUMBER OF JURORS ALLOWED BY LAW.**

Dated: February 24, 2026.

                                              */s/James A. Teigland*
                                    James A. Teigland (ND ID 07895)
                                    FREMSTAD LAW FIRM
                                    P.O. Box 3143
                                    Fargo, North Dakota 58108-3143
                                    Phone: (701) 478-7620
                                    james@fremstadlaw.com
                                    ATTORNEYS FOR PLAINTIFF